J-A13026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.M.,JR., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.M.,SR., FATHER | : : : : : : : | No. 211 EDA 2022 |

Appeal from the Decree Entered December 10, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-AD-0000014-2021

BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                        **FILED JULY 29, 2022**

Appellant, P.M., Sr. ("Father") appeals from the December 10, 2021 Decree entered in the Wayne County Court of Common Pleas that involuntarily terminated his parental rights to twelve-year old P.M., Jr. ("Child"), born in April 2009, pursuant to 23 Pa.C.S. § 2511(a)(11) and (b) of the Juvenile Act. Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Child's biological mother is deceased.  On January 27, 2021, Father agreed to place Child in the care and custody of the Wayne County Children and Youth Services Agency ("the Agency") after Father was arrested on charges of Involuntary Deviate Sexual Intercourse with a Child and related crimes, incarcerated, and unable to post the $250,000 bail.  On February 22, 2021, after Father revoked his consent to placement, the trial court held a hearing and granted the Agency's request for emergency placement of Child.

On February 25, 2021, the trial court adjudicated Child dependent and ordered the Agency to retain legal and physical custody of Child.

On July 22, 2021, a court sentenced Father to 12 to 84 months' incarceration after he entered a guilty plea to Corruption of Minors – Related to Sexual Offenses for the sexual assault of his live-in paramour's twelve-year-old daughter.

On August 3, 2021, the Agency filed a Motion for Aggravated Circumstances alleging that Father was required to register as a sexual offender, which is grounds for a finding of aggravated circumstances pursuant to Section 6302 of the Juvenile Act. On August 10, 2021, the trial court held a hearing on the Agency's motion. The Agency presented testimony from Heather Schariest, the Agency case worker assigned to Father and Child's case. Ms. Schariest testified that Father pled guilty to Corruption of Minors – Related to Sexual Offenses and was required to register as a Tier One sex offender for fifteen years. Ms. Schariest testified that it was the Agency's position that reunification efforts should cease and that it would be in Child's best interest to pursue a goal change to Adoption. The Agency entered a certified copy of Father's July 22, 2021 Sentencing Order into evidence without objection. Father confirmed that he remained incarcerated and testified that he opposed the motion for various reasons, including that Child looked horrible during the last visitation *via* video, that Child did not know what was going on, and that Father never raised a hand or weapon to Child.

On August 10, 2021, the trial court found that the Agency presented clear and convincing evidence to establish that aggravated circumstances existed because Father was required to register as a sexual offender. The court concluded that the Agency did not have to make efforts to reunify Child with Father.

On September 15, 2021, the Agency filed a Petition for Involuntary Termination of Father's Parental Rights.[1] On October 29, 2021, the court held a hearing on the petition. The Agency presented testimony from Stephanie Pender, an Agency caseworker. Father testified on his own behalf.

In sum, Ms. Pender testified that Child was placed in foster care for the prior nine months awaiting an adoptive placement with his paternal uncle in Arizona. Ms. Pender explained that Child and Father had video visits two times per month, but the visits have been difficult to arrange since authorities transferred Father from county jail to state prison. Ms. Pender testified that Father and Child have a bond, but that it has "faded considerably" and although Child misses Father, Child wants to move forward and wishes to be

---

[1] The trial court appointed Child's guardian *ad litem* ("GAL") to serve as Child's legal counsel during the termination proceedings. Upon review of the certified record, the Agency informed the trial court about Child's expressed wish to be adopted. Since no conflict existed between Child's legal interests, which were synonymous with his expressed preference to be adopted, and Child's best interests, which were to involuntarily terminate Father's parental rights and to permit adoption, the appointment of the GAL as counsel representing both the child's legal interests and his best interests was sufficient. *See In re P.G.F.*, 247 A.3d 955, 964 (Pa. 2021) (stating that, when a child's best interests and legal interests do not conflict, the trial court may appoint a single attorney to serve in the dual capacity of guardian *ad litem* and legal counsel).

adopted by his uncle. N.T. TPR Hearing, 10/29/21, at 8, 10. Ms. Pender further testified that Child is doing well in placement, is fully compliant with his permanency plan, and has a bond with his uncle whom he contacts *via* telephone and video several times a week. Ms. Pender testified that Father is currently incarcerated at SCI Camp Hill, is non-compliant with the permanency plan, and has not contacted the Agency or requested updates since the last court date. Ms. Pender confirmed that the trial court previously found aggravated circumstances because Father was required to register as a sex offender. Ms. Pender testified that a goal change to adoption and termination of parental rights would be in Child's best interest and serve his developmental, physical, and emotional needs.

Father testified that he was opposed to his rights being terminated, that he has not been able to speak to Child in four months, that his criminal case has nothing to do with Child, and Child wants Father in his life. Father stated that he should not lose his parental rights when "prostitut[es,] gays[,] and lesbians have rights to children." *Id.* at 19. Father explained that he was only asking to have video visits and "I only live for my children. . . I really miss my son a lot, he's the only thing I got left." *Id.* at 19-21. Father testified that he would be released early in fifteen months if he finished required classes. Finally, Father explained that he did not think it was in Child's best interest to be in foster care and he wanted Child to be with Child's uncle in Arizona.

J-A13026-22

On December 10, 2021, the trial court found that Father was a registered sex offender and that it was in Child's best interest to terminate Father's parental rights and change Child's permanency goal to Adoption.

Father timely appealed. Father complied with Pa.R.A.P. 1925. The trial court relied on its December 10, 2021 Order and Opinion in lieu of a Rule 1925(a) opinion.

**ISSUES RAISED ON APPEAL**

Father raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred as a matter of law in determining that termination of parental rights of [Father] was warranted?

2. Whether the [t]rial [c]ourt erred as a matter of law in determining that termination of parental rights of [Father] was in the best interests of [C]hild.

3. Whether the [t]rial [c]ourt erred as a matter of law in determining that [the Agency] had met its burden of proof in this involuntary termination of parental rights [] matter?

Father's Br. at 4.

**LEGAL ANALYSIS**

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion,

- 5 -

an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. ***T.S.M.***, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted).

**Termination Pursuant to Section 2511(a)(11)**

Instantly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(11), which provides that a court may terminate parental

rights if "[t]he parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders)[.]" 23 Pa.C.S. 2511(a)(11).

Father avers that the Agency failed to present clear and convincing evidence that Father was a registered sex offender, and, therefore, the trial court erred when it terminated Father's parental rights pursuant to Section 2511(a)(11). Father's Br. at 9-10, 13. Father argues that the only evidence in the record to prove that Father was a registered sex offender was testimony from the Agency caseworker. *Id.* at 10. Father acknowledges that during an earlier aggravated circumstances hearing the Agency entered a certified copy of Father's July 22, 2021 Sentencing Order into evidence without objection. *Id.* However, Father argues that the Agency failed to incorporate the evidence from that hearing into the termination proceedings and, therefore, failed to present sufficient evidence that Father was a registered sex offender. *Id.* Father's argument is devoid of merit.

Notably, Father himself points to evidence in the record that supports the trial court's decision to terminate his parental rights pursuant to Section 2511(a)(11) when he acknowledges Ms. Pender's testimony in his Brief. Our review of the record confirms that during the termination proceeding, Ms. Pender testified that the court previously made a finding of aggravated circumstances based on Father's requirement to register as a sex offender. N.T. TPR Hearing at 11. Father did not object to this testimony or present any evidence to dispute it. As stated above, the trial court is free to believe all,

part, or none of the evidence as well as make credibility determinations and weigh the evidence. Ms. Pender's testimony provided the trial court with evidence to support a termination of parental rights pursuant to Section 2511(a)(11), which merely requires the Agency to present evidence that a parent is a registered sex offender and does not specify the type or amount of evidence required to prove such. We decline to reweigh the evidence. As the record supports the trial court's findings, we discern no abuse of discretion.[2]

**Termination Pursuant to Section 2511(b)**

Upon review, we conclude that the Agency also presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(b).

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. This Court reviews whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that

---

[2] Father also argues, without citation to any legal authority, that the trial court erred in its Opinion and Decree when it relied on evidence from Father's aggravated circumstances hearing, which was held pursuant to a separate docket, to support its conclusion that Father was a registered sex offender. As Father failed to provide any legal support for his argument, we find it to be waived. *See **In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) (finding waiver where the argument portion of an appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority). We decline to act as counsel.

"[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).

One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, "with close attention paid to the effect on the child of permanently severing any such bond." ***In re Adoption of N.N.H.***, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent does not preclude the termination of parental rights. ***In re A.D.***, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that "its termination would destroy an existing, necessary, and beneficial relationship." ***Id.*** at 898 (citation and internal quotation marks omitted). Moreover, the trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010).

Instantly, the trial court found that Child did have a bond with Father, that the bond had "faded considerably" over time, and that terminating Father's parental rights would be in Child's best interest. Opinion and Decree, 12/10/21, at 2, 3, 6. The trial court emphasized that Child was "looking forward to moving forward" and wished to be adopted by his uncle. ***Id.*** at 2-

3. The record supports the trial courts findings, and we discern no abuse of discretion.[3]

**CONCLUSION**

In conclusion, our review of the record supports the trial court's findings. We discern no error of law or abuse of discretion with respect to the trial court's conclusion that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(a) and (b).

Decree affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2022

---

[3] To the extent that Father argues that the trial court did not do a proper Section 2511(b) analysis, we find this argument to be waived as Father failed to raise it in his Rule 1925(b) statement and, thus, it is being raised for the first time on appeal. *See* Pa.R.A.P. 1925(b)(vii) (explaining that issues not included in the Rule 1925(b) statement are waived); Pa.R.A.P 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").